## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS O'HARA, | : | Civil No. 3:17-cv-916 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| OFFICER NEIL MOSHER, | : | |
| OFFICER MARK BERKOSKI, | : | |
| | : | |
| Defendants | : | |

FILED
SCRANTON

NOV 1 4 2017

PER _____
DEPUTY CLERK

## MEMORANDUM

### I. Background

Plaintiff Thomas O'Hara ("Plaintiff"), an inmate housed at the State Correctional Institution at Waymart, Pennsylvania ("SCI-Waymart"), commenced this civil rights action on May 24, 2017. (Doc. 1). Before the Court is Plaintiff's motion (Doc. 18) for default judgment and Defendants' motion (Doc. 13) to dismiss pursuant to Federal Rule of Civil Procedure 12(b). For the reasons set forth below, the Court will deny Plaintiff's motion for default judgment and grant Defendants' motion to dismiss.

### II. Allegations of the Complaint

At all relevant times, Plaintiff was housed on Block D-1 at SCI-Waymart. (Doc. 1). Defendants Mosher and Berkoski are correctional officers at SCI-Waymart. (Id. at 8-9). Plaintiff alleges that Defendants Mosher and Berkoski harass inmates until they agree to move off of Block D-1. (Id. at ¶ 10).

Plaintiff has a combination lock on the cabinet in his cell that can be opened with his key and with a master key available to correctional officers. (*Id.* at ¶ 12).

Plaintiff alleges that on June 3, 2016, Defendants unlocked his cabinet and stole a bag of tobacco. (*Id.* at ¶ 13). Plaintiff allegedly requested to speak with a sergeant about the missing tobacco, but Defendant Mosher denied his request. (*Id.* at ¶ 14).

On June 5, 2016, Plaintiff organized his cabinet, made his bed, and left for work. (*Id.* at ¶ 16). While Plaintiff was at work, he claims that Defendants removed items from his cabinet and messed up his bed. (*Id.* at ¶ 17). He alleges that Defendants blamed him for the mess and, as a result, placed him in a closet and assaulted him. (*Id.* at ¶¶ 19-33). Plaintiff asserts that he did not resist the officers during the alleged assault. (*Id.* at ¶ 32).

After the alleged assault, Plaintiff was transported to the infirmary for medical treatment. (*Id.* at ¶ 36). He was subsequently transported to an outside hospital for x-rays and a CAT scan of his head. (*Id.* at ¶ 37). Plaintiff lost consciousness during the assault, and sustained bruises to his face, sprained his wrist and knee, and suffered from head trauma. (*Id.* at ¶¶ 30, 36-38).

Plaintiff alleges that Defendants filed a false misconduct against him claiming that he pushed Defendant Mosher. (*Id.* at ¶ 40). Plaintiff further alleges that Defendants filed a false report with the police, again claiming that he pushed Defendant Mosher. (*Id.* at ¶ 41).

As a result of the misconduct, Plaintiff was sentenced to eighty-nine (89) days in

solitary confinement. (*Id.* at ¶ 44). While in solitary confinement, Plaintiff alleges that

Defendant Berkoski harassed him. (*Id.* at ¶ 47).

## III.    Motion for Default Judgment

Plaintiff filed a request for entry of default and a motion for default judgment. (Docs.

15, 18). An Order directing service of the complaint was issued on May 30, 2017, and

waivers of service were issued on May 31, 2017. (Docs. 8, 10). Defendants executed the

waivers on July 5, 2017. (Doc. 12). Because Defendants waived service, a response to the

complaint was due on or before July 31, 2017. *See* FED. R. CIV. P. 12(a)(1)(A)(ii) ("A

defendant must serve an answer . . . if it has timely waived service under Rule 4(d), within

60 days after the request for a waiver was sent"). On August 21, 2017, Defendants filed a

motion to dismiss the complaint. (Doc. 13). On October 2, 2017, Plaintiff filed a request for

entry of default and supporting declaration, based on Defendants' failure to timely submit a

response. (Docs. 15, 16). It appears from the docket that default was never entered by the

Clerk's Office. Also on October 2, 2017, Plaintiff filed a motion for default judgment. (Doc.

18).

Entry of default judgment is a two-step process. FED. R. CIV. P. 55. A party seeking

to obtain a default judgment must first request that the clerk of the court "enter . . . the

default" of the party that has not answered the pleading or "otherwise defend[ed]," within the

time required by the rules or as extended by court order. FED. R. CIV. P. 55(a). Timely

serving and filing a motion to dismiss under FED. R. CIV. P. 12(b) precludes entry of default. *See Francis v. Joint Force Headquarters Nat'l Guard*, 2006 WL 2711459, at *2 (D.N.J. Sept. 19, 2006). Even if default is properly entered, the entry of judgment by default pursuant to Rule 55(b)(2) is within the discretion of the trial court. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Although the entry of a default judgment is largely a matter of judicial discretion, it is well recognized that "entry of default is generally disfavored and [there is a] strong preference that cases be decided on their merits." *Ruhle v. Housing Authority of City of Pittsburgh*, 54 F. App'x 61, 62 n.1 (3d Cir. 2002); *Joe Hand Promotions, Inc. v. Tickle*, 2014 WL 1051821, *3 (M.D. Pa. 2014).

In the case at bar, Plaintiff was procedurally correct in moving for the entry of default on October 2, 2017, as Defendants' response to the complaint was not timely. However, before Plaintiff filed his request for entry of default, Defendants did file a motion to dismiss the complaint, a motion that Plaintiff has opposed. In light of the fact that default was never entered in the case, a motion to dismiss has been filed, and Plaintiff has addressed the motion to dismiss, the Court will deny the motion for default and address the motion to dismiss. *See, e.g., Horacek v. Wilson*, 2008 WL 4093721, *1 n. 1 (E.D. Mich. 2008) (even if an answer is not timely filed, if a defendant answers or otherwise defends before the Clerk of Court actually enters a default, no default may enter).

Before granting a default judgment, the Court must consider three factors: (1)

4

whether Plaintiff will be prejudiced if the default is not granted; (2) whether Defendants have a meritorious defense; and (3) whether Defendants' delay was the result of culpable misconduct. *Hritz*, 732 F.2d at 1180. Defendants have not addressed the default issue, however there is no reason to believe that the failure to timely respond to the complaint was due to culpable misconduct. Further, there is no reason to believe Plaintiff will be prejudiced by the denial of default judgment. He has opposed Defendants' motion to dismiss. (Doc. 22). In addition, the Court finds that Defendants have a meritorious defense to Plaintiff's claims. For these reasons, the motion for default will be denied.

## IV.  Motion to Dismiss

### A.  Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words,

5

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted). A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint: First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## B. Discussion[1]

Section 1983 of Title 42 of the United States Code offers private citizens a cause of

action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute

provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

---

[1] In *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit addressed the issue of whether the defendants in *Spruill* properly identified their motion as one for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court noted that "[g]iven that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment." *Id.* at 223 (citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003)). *See also Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) ("In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss"); *Ray v. Kertes*, 285 F.3d 287, 293 n.5 (3d Cir. 2002) (motions to dismiss may be pursued on failure to exhaust grounds in certain circumstances). Accordingly, the Court will consider the Department of Corrections' policies and inmate grievance records as indisputably authentic documents. *See Spruill*, 372 F.3d at 223 (suggesting that an inmate's grievance records are "indisputably authentic documents").

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendants seek dismissal of the complaint based on Plaintiff's failure to fully exhaust any grievances in the prison's administrative review process prior to proceeding to federal court. (Doc. 14, p. 7). Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 (2001). The exhaustion requirement is mandatory, *see Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth*, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Courts have also imposed a procedural default component on the exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the

8

inmate grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d

218 (3d Cir. 2004). Inmates who fail to fully, or timely, complete the prison grievance

process, or who fail to identify the named defendants, are barred from subsequently

litigating claims in federal court. *See Spruill*, 372 F.3d 218. "As for the failure to identify

named defendants on the grievance form, . . . to the extent the identity of a defendant was

'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the

identification be included in the inmate's statement of facts on the grievance form. And, . . .

in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify

a defendant constituted a failure to properly exhaust his administrative remedies under the

PLRA." *Williams v. Pennsylvania Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005)

(non-precedential). An "untimely or otherwise procedurally defective administrative

grievance" does not satisfy the PLRA's exhaustion requirement. *Woodford v. Ngo*, 548 U.S.

81, 83-84 (2006). Thus, the PLRA mandates that inmates "properly" exhaust administrative

remedies before filing suit in federal court. *Id.* at 92.

The Pennsylvania Department of Corrections ("DOC") has an Inmate Grievance

System which permits any inmate to seek review of problems that may arise during the

course of confinement. *See* 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM

804; (*see also* Doc. 14-1, pp. 2-52). After an attempt to resolve any problems informally, an

inmate may submit a written grievance to the Facility's Grievance Coordinator for initial

review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). *See Booth v. Churner*, 206 F.3d 289, 293 n. 2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth*, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

Defendants seek to dismiss the complaint based on Plaintiff's failure to exhaust the available administrative review procedures. Specifically, Defendants argue that Plaintiff never fully exhausted any grievances while an inmate with DOC. (Doc. 14, p. 7). Defendants submitted a declaration of Keri Moore, Assistant Chief Grievance Officer in the Secretary's Office of Inmate Grievances and Appeals of the DOC, wherein she declares that a review of the Department records confirms that Plaintiff failed to appeal any grievances to the SOIGA for final review. (Doc. 14-2, Declaration of Keri Moore ("Moore Decl.") ¶ 8). As noted above, the standard used in determining whether a prisoner has

10

exhausted the administrative process is whether he complied with the applicable grievance procedures and rules. The records maintained by the Department of Corrections confirm that Plaintiff never appealed any grievances to final review. (Doc. 14-2).

In certain circumstances, a prisoner may be excused from the exhaustion requirement. The Third Circuit recognizes a "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). An inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis*, 49 F. App'x at 368. The Third Circuit has recently stated that the institution "rendered its administrative remedies unavailable to [an inmate] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016). In the present matter, Plaintiff does not allege that he was he misled or ignored by prison officials, was impeded in filing a grievance, or that some other extraordinary circumstance prevented him from complying with the grievance process. Although Plaintiff filed an opposition brief, with attached exhibits, he fails to oppose the dismissal of the complaint on the grounds that he failed to utilize the DOC's

11

Inmate Grievance System with respect to the incident alleged in the complaint. (*See* Doc.

22). It is clear that Plaintiff failed to fully utilize the DOC's Inmate Grievance System prior to

proceeding in federal court. Consequently, Defendants' motion to dismiss will be granted.[2]

## V. Conclusion

For the reasons set forth above, Plaintiff's motion (Doc. 18) for default judgment will

be denied and Defendants' motion (Doc. 13) to dismiss will be granted. A separate Order

will issue.

Dated: November 13, 2017

Robert D. Mariani
United States District Judge

---

[2] A district court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). "In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (interpreting Federal Rules of Civil Procedure). An amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted. *In re NAHC, Inc. Securities Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). Because Plaintiff cannot overcome the failure to exhaust administrative remedies, leave to amend would be futile.